Charles WALDER et al., Plaintiffs-Appellants,

v.

PARAMOUNT PUBLIX CORP. et al., Defendants-Appellees.

No. 12, Docket 25471.

United States Court of Appeals Second Circuit.

Argued Oct. 9, 1959.

Decided Dec. 1, 1959.

---

---

Claudia Pearlman, New York City (Edgar A. Buttle, New York City, of counsel), for plaintiffs-appellants.

Louis Phillips, New York City (E. Compton Timberlake, Marvin H. Ginsky, Bernard E. Kalman, New York City, of counsel), for defendants Paramount Pictures Inc. (In Dissolution), Paramount Film Distributing Corporation and Paramount Pictures Corporation.

Jerome B. Golden, New York City (E. Compton Timberlake, New York City, of counsel), for defendant American Broadcasting-Paramount Theatres, Inc.

Royall, Koegel, Harris & Caskey, New York City (John F. Caskey, Stanley Godofsky, New York City, of counsel), for defendants TCF Film Corporation, a New York corporation, now dissolved, Warner Bros. Pictures Distributing Corporation and RKO Radio Pictures, Inc.

Schwartz & Frohlich, New York City (Myles J. Lane, New York City, Bernard R. Sorkin, Brooklyn, N. Y., of counsel), for defendant Columbia Pictures Corporation.

Before LUMBARD, WATERMAN, FRIENDLY, Circuit Judges.

WATERMAN, Circuit Judge.

From the year 1928 to the present time the Walder family, through various corporations, has had exclusive ownership of the Tivoli Theatre, a neighborhood motion picture house in Miami, Florida. Save for the period between 1937 and 1947 operation of the theater also has been exclusively in the hands of the Walders. Until 1931 ownership and operation were both in the name of Tivoli Theatre, Inc. In 1931 ownership was transferred to Walwal Corporation. In 1937 Tivoli Operating Corporation was organized to replace Tivoli Theatre, Inc. in the operation of the theater. The total subscribed capital of Operating consisted of $2,000: $1,000 paid in by Walwal and $1,000 paid in by Paramount Enterprises, Inc.[1] Operating paid Walwal an annual rent of $9,600; Enterprises exerted its efforts in obtaining films for the Tivoli; and the net proceeds were divided between Walwal and Enterprises in proportions which varied over the ten-year existence of the arrangement. In 1947 these arrangements were terminated, and operation of the theater passed to Tivoli Amusement Company, Inc., a corporation wholly owned by the Walder family. In 1951 the members of the Walder family, in their various capacities, filed a private antitrust action alleging that Enterprises was included in management of the Tivoli Theatre, and in the profits therefrom, only because of prior coercion exerted by defendants in

---

1. During the period here involved Paramount Enterprises operated theaters in the Miami region and was a wholly owned subsidiary of defendant Paramount Pictures, Inc.

preventing the Tivoli Theatre from receiving motion pictures for exhibition which the theater would have obtained had distribution been on a properly competitive basis. Thus plaintiffs alleged injury from practices condemned in United States v. Paramount Pictures, 1948, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260.

In the complaint there were five plaintiffs or groups of plaintiffs—(1) the members of the Walder family individually; (2) the members of the Walder family as trustees for Tivoli Theatre, Inc., a dissolved corporation; (3) the Walwal Corporation; (4) Tivoli Amusement Company, Inc.; (5) two members of the Walder family as two of the surviving three trustees of Tivoli Operating Corporation, a dissolved corporation.[2] At various stages of the pre-trial proceedings all the plaintiffs have been eliminated from the case [3] except the plaintiffs in category (5), the trustees of Operating Corporation. As to them, on September 29, 1958 the district court, in an unreported opinion, granted defendants' motion for summary judgment. This appeal followed.

This lengthy discussion of the facts and the present posture of the case has been necessary in order to underscore the fact that the solitary question facing this court is the propriety of the district court's action in entering summary judgment against the trustees of Operating Corporation. No other plaintiffs are involved. As stated in the preceding paragraphs, Operating Corporation was, according to the Walder complaint, the fruition of the alleged conspiracy in violation of the anti-trust laws; i. e., plaintiffs claim that but for the alleged violations Operating Corporation would never have come into existence. Thus the present plaintiffs complain that the very acts which created their corporation have also injured it, a difficult position for the trustees here to maintain successfully. In an effort to escape their predicament plaintiffs contend that Enterprises, a named co-conspirator though not a defendant, received as a result of the alleged coercion more from Operating than it contributed. Plaintiffs argue that Enterprises contributed only $1,000 in exchange for the far more valuable right to proceeds from the management of the theater resulting from the extremely favorable lease which Walwal offered to Operating. Plaintiffs' argument, however, is patently unsound. For its $1,000 contribution to Operating's capital Enterprises received exactly what it paid for, a 50% interest in a corporation that had no assets except the capital the two parties paid in. And even if we should assume that there was evidence to support plaintiffs' contention that the rent under the lease was unfairly low and that the point was still open to plaintiffs despite their failure to prosecute their appeal from Judge Leibell's order finding the rent to be fair,[4] the aggrieved party would be Walwal, not Operating. The

---

**2.** Operating was formally dissolved on Oct. 12, 1948.

**3.** A detailed history of the litigation is necessary at this point. The original complaint was filed on September 4, 1951. In an opinion dated June 24, 1955 and reported at D.C.S.D.N.Y.1955, 132 F.Supp. 912, Judge Weinfeld granted defendants' motion for summary judgment to the extent of eliminating the Walders from the case, both as individuals and as trustees of Tivoli Theatre, Inc. Judge Weinfeld reasoned that the Walders individually had no standing since the only injuries alleged related to corporations of which the Walders were stockholders. Judge Weinfeld then held that under the controlling Florida law, the trustees of a dissolved corporation, fully as much as the dissolved corporation, were bound by the requirement that suits by a dissolved corporation be brought within three years after final dissolution.

On December 17, 1956 Judge Leibell granted summary judgment dismissing Walwal from the case. He held that Walwal had received a fair rent from Operating in the ten-year period of Operating's existence. Walwal appealed from this decision, but on June 12, 1957 the appeal was dismissed for failure to prosecute.

On June 5, 1958 Judge Dimock dismissed the complaint as to Tivoli Amusement. No appeal was taken.

**4.** See footnote 3, supra.

district court quite properly concluded that Operating could not demonstrate injury. Cf. Fanchon & Marco, Inc. v. Paramount Pictures, D.C.S.D.N.Y.1955, 133 F.Supp. 839, 845.

Disposing of the case as we do, we do not reach appellees' other contentions.

Judgment affirmed.